## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **S.K. III**

**No. 18-0955** (Berkeley County 18-JA-10)

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother B.P., by counsel Michael Santa Barbara, appeals the Circuit Court of Berkeley County's September 19, 2018, order terminating her parental rights to S.K. III.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth Layne Diehl, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period, finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the foreseeable future, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2018, the DHHR filed a petition alleging that petitioner abused her child by exposing him to drug use. Specifically, the DHHR alleged that the child was present in a hotel room where an individual died from an overdose and where drug paraphernalia was left within the child's reach. The DHHR further alleged that petitioner failed to provide the child with proper care as a result of her substance abuse. Petitioner did not appear for her preliminary hearing, but was represented by counsel.[2] The circuit court continued the child in the care of the DHHR.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]At various times throughout the proceedings, petitioner was incarcerated on charges unrelated to the removal of the child.

1

The circuit court held an adjudicatory hearing in March of 2018, but determined petitioner was under the influence of a controlled substance. Petitioner tested positive for cocaine and opiates. The circuit court continued the hearing. Later in March of 2018, petitioner appeared for an adjudicatory hearing and stipulated to the allegations of abuse and neglect. The circuit court adjudicated her as an abusing parent.

In May of 2018, the circuit court held a hearing on petitioner's motion for a post-adjudicatory improvement period. Petitioner did not appear, but was represented by counsel. The DHHR reported that petitioner was admitted to an inpatient substance abuse treatment facility, but was discharged from that facility after admitting she was in possession of controlled substances. The circuit court took a negative inference from petitioner's failure to appear and denied her motion for a post-adjudicatory improvement period.

The circuit court held the final dispositional hearing in August of 2018. Petitioner orally moved for a post-dispositional improvement period and the DHHR moved to terminate petitioner's parental rights. Petitioner, who appeared telephonically, testified that she had been participating in an inpatient substance abuse treatment program for three weeks and was compliant in that program. Petitioner explained that the program length was six months to one year and that she was participating in order to receive a lighter sentence in her unrelated criminal case. The case worker testified that, following the removal of the child, petitioner failed to contact the DHHR until she was incarcerated in March of 2018. The worker explained that petitioner was participating in a second inpatient substance abuse treatment program related to her criminal proceedings, but had been unable to participate in services with the DHHR due to her incarceration. The worker further explained that petitioner did not attempt to provide support for, or to request visitation with, the child since the removal. Finally, the child's current caretaker confirmed that petitioner failed to provide any support for the child and only "briefly" inquired regarding his well-being.

Ultimately, the circuit court found petitioner failed to fully participate in the proceedings with only "minimal if any compliance with terms of treatment and other services that the [DHHR] has offered" and "[t]he last minute drug treatment by [petitioner] [did] not demonstrate to this [c]ourt that [she] would fully participate in an improvement period." Further, the circuit court found "it is not in the infant's best interest for permanency to be left in limbo when [petitioner] has been unable to demonstrate to this [c]ourt that she could fully participate in an improvement period" and it was unlikely that the conditions of abuse and neglect could be remedied in the near future. Accordingly, the circuit court terminated petitioner's parental rights by its September 19, 2018, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

---

[3]The father's parental rights were also terminated. According to the parties, the permanency plan for the child is adoption in his current relative foster placement.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period.[4] Petitioner asserts that there was no compelling reason to deny her motion for a post-adjudicatory improvement period because the only evidence introduced was the circuit court's negative inference based on her failure to appear. We find petitioner is entitled to no relief as she ignores that she did not satisfy her burden of proof that she would substantially comply with the terms of an improvement period. West Virginia Code § 49-4-610(2)(B) provides that a circuit court may grant a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Petitioner is correct that her absence was the only evidence introduced in regard to her motion for a post-adjudicatory improvement period. Clearly, this evidence did not demonstrate that she was likely to fully participate in an improvement period. Petitioner's failure to satisfy her burden of proof is a compelling reason to deny her motion because the child's permanency would be needlessly delayed if petitioner was unlikely to participate in the improvement period. Accordingly, we find that the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

Petitioner also argues that the circuit court erred in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and in terminating her parental rights. Petitioner believes that the circuit court wrongfully

---

[4]Although petitioner requested both post-adjudicatory and post-dispositional improvement periods, her argument on appeal focuses only on the circuit court's denial of her motion for a post-adjudicatory improvement period.

dismissed evidence regarding her second inpatient substance abuse treatment. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child."

The circuit court correctly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future because petitioner failed to follow through with rehabilitative efforts designed to reduce the neglect of the child. Petitioner admitted that she was removed from her first inpatient substance abuse treatment facility. Further, although petitioner was participating in a second inpatient treatment, her participation was a requirement for a more lenient criminal sentence. The evidence also showed that petitioner never requested contact with the child and only thought to check on him once during the proceeding below. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *Katie S.*, 198 W. Va. at 90, n.14, 479 S.E.2d at 600, n.14 (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Petitioner's disinterest in the child was also exemplified in the first two months of the proceedings during which petitioner was free from incarceration, but did not contact the DHHR regarding her son.

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Given that petitioner attempted and immediately failed her first inpatient substance abuse treatment, the circuit court was not bound to speculate on whether she could complete her current treatment and risk delaying permanency for the child. Accordingly, the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.

Similarly, we find that termination was necessary for the welfare of the child. Petitioner's tentative completion of treatment would result in a considerable delay in permanency for the infant child and the outcome was uncertain. We have held as follows:

4

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The circuit court did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected or in finding that termination was necessary for the welfare of the child. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 19, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: March 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison